## STAHLBRODT CO. v. FORD MOTOR CO.

(Circuit Court of Appeals, Second Circuit. November 14, 1916.)

No. 90.

PATENTS ☞328—INVENTION—WIND GUARD FOR MOTOR VEHICLES.

The Samuel reissue patent, No. 13,574 (original No. 879,195), for a wind guard for motor vehicles, *held* void for lack of invention, in view of the prior art.

Appeal from the District Court of the United States for the Western District of New York.

Suit in equity by the Stahlbrodt Company against the Ford Motor Company. Decree for complainant, and defendant appeals. Reversed.

For opinion below, see 233 Fed. 678.

This is an appeal from a decree holding valid and infringed claims 2, 3 and 5 of reissued letters patent No. 13,574 granted to Henri Saul Samuel June 10, 1913. These claims are as follows:

"2. A wind guard for vehicles consisting of a lower stationary and rigidly supported flat portion extending transversely of the vehicle and inclined rearwardly in proximity to the steering wheel or handle, an upper transparent flat portion adjustably and permanently hinged upon the lower portion and adapted to be folded forwardly against the latter into parallelism therewith, and means for maintaining the portions in one of their positions of relative adjustment, said means being arranged laterally so as to clear the parts when folded.

"3. In a wind shield for a motor or similar vehicle, the combination with the dash or front part of the vehicle, of a lower member fixed to the dash and extending inwardly and upwardly to a level near that of the steering wheel or handle, the rods D for maintaining the member in such fixed and rigid position arranged rearwardly of the member and connected thereto and to a rigid part of the vehicle, a second flat and rigid member having a permanent hinged connection with the lower member and extending vertically upward from the lower member in front of the driver's face and means arranged at the ends of the members for adjusting the upper member relatively to the lower member."

"5. In a wind shield for motor or similar vehicles the combination with the dash, of a lower flat member rigidly fixed at its front or lower edges to the upper edge of the dash and extending at an inclination rearwardly and upwardly to a level near that of the steering wheel or handle, the rods D for maintaining the member in such fixed and rigid position arranged rearwardly of the member and connected thereto at its respective ends and to a rigid part of the vehicle, a second flat and rigid member having a permanent hinged connection with the lower member to turn relatively thereto on an axis sub-

stantially coincident with its lower edge and with the upper edge of the lower member said upper member normally extending upward from the lower member in front of the driver's face but being adapted to fold forwardly against the lower member, and means arranged at each end of the members for adjusting the upper member relatively to the lower member each comprising interlocking devices connected to the members respectively at points adjacent to their axis of relative movement."

James Whittemore, of Detroit, Mich., and Charles Neave, of New York City, for appellant.

Melville Church, of Washington, D. C., and Frederic F. Church, of Rochester, N. Y., for appellee.

Before COXE, WARD, and ROGERS, Circuit Judges.

COXE, Circuit Judge (after stating the facts as above). The motor car industry has developed so enormously during the last 15 years that we are apt to regard the completed car of to-day as something akin to the miraculous. The truth is that the perfected structure is due to the evolution of the art by which changes were made and improvements added as the necessity therefor developed. As speed increased, the demand for protection from the wind, rain and dust became urgent. It required no inventive genius to accomplish this result, at least in a primitive manner. As to location, there could be no dispute; the shield must be placed in front of the chauffeur and the other occupants of the car. It must be transparent or the chauffeur cannot see to steer. In other words, the moment the necessity for a wind shield was apparent the location, the material and the dimensions became instantly obvious. No one possessed of ordinary intelligence would think of locating the shield except in front of the person to be protected; no one would think of constructing it of other than transparent material, making it high enough and broad enough to protect the occupants of the car from wind and rain. So too, when the shield became covered with mist, obscuring the vision, of the chauffeur, it required nothing but ordinary common sense to construct the shield so that a view of the road ahead could be afforded. This might be done by making an observation part through the glass or by dividing the shield into two parts so that the upper half could be opened for a short distance, leaving a longitudinal opening through which the road could be seen.

The extreme simplicity of the problem is so obvious that we are unable to discover anything in Samuel's contribution to the art which arises to the dignity of invention. Mounting the lower section with an inward slant was a perfectly natural and obvious thing to do, but Samuel was not the first to adopt it. Lanchester used this same construction in 1901. This patent No. 25,121 is for a dashboard which for the present purposes is sufficiently described in the first claim which is as follows:

"In self-propelled vehicles, dashboards consisting of a lower portion hinged to the vehicle and an upper adjustable portion substantially as described."

Lanchester's object was the same as that of Samuel, viz., to provide protection from the wind and rain in self-propelled vehicles by means of a two-part dashboard which can be adjusted to different conditions of weather. The identity will be apparent by comparing the above

claim with Samuel's second claim. Kerr in 1906 received a patent for wind shields for self-propelled motor vehicles having the same object in view as Lanchester. These patents and other constructions found in the record have the same problem in view which Samuel sought to solve and they did it in substantially the same way.

Lanchester's shield is quite different in appearance from Samuel's, but it will be found on inspection that he had in view the same objects as Samuel and that his structure has substantially every element of the Samuel claims.

The decree is reversed with costs.